Case 4:18-cv-04409   Document 65   Filed on 08/26/21 in TXSD   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
August 27, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CASEY BROWN, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:18-CV-4409 |
| § | |
| CITY OF HOUSTON, *et al*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant City of Houston's Motion for Summary Judgment. (Dkt. 48). After careful consideration of the motion, response, reply, and all of the summary judgment evidence, the Court finds that there is no genuine issue of material fact and that the Defendant is entitled to judgment as a matter of law. Accordingly, the motion for summary judgment is **GRANTED.**

I.   **FACTUAL BACKGROUND**

On October 13, 2016, Plaintiff Casey Brown walked his two dogs by the side of his mother's house after he got home from work shortly after 5:00 p.m. (Dkt. 48-A at 54:2–55:13). After Brown returned home from the walk, his neighbor, Defendant Jason Loosmore, an off-duty Houston police officer, placed his foot in between Brown's door and doorstep. (Dkt. 48-A at 56:2–25). Loosmore was not in his police uniform and was not wearing his badge around his neck. (Dkt. 48-A at 59:1–5, 65:22–66:25). Brown testified that he did not know that Loosmore was a police officer. (Dkt. 48-A at 59:1–8, 65:22–66:6).

A verbal altercation between Brown and Loosmore ensued in which Loosmore accused Brown's dogs of having attacked Loosmore's dogs and Brown denied that his dogs had attacked anyone's dogs. (Dkt. 48-A at 58:2–59:12). Although Loosmore did not identify himself as a police officer, he told Brown that he would be going to jail twice. (Dkt. 48-A at 59:13–15, 65:16–21). Brown refused to exit the house and Loosmore walked towards Brown's driveway and called 911. (Dkt. 48-A at 59:23–60:12; Dkt. 48-B at pp. 17–18).

After watching Loosmore from his house, Brown stepped outside and yelled at Loosmore, who was at the end of the driveway, from the side of the house. (Dkt. 48-A at 61:4–15, Dkt. 48-B at pp. 17–18). At that time, Loosmore began running towards Brown and ordered Brown to put his hands up. (Dkt. 48-A at 61:7–21).

Loosmore grabbed Brown's left arm and attempted to grab his right arm. (Dkt. 48-A at 62:14–20, 63:1–3). Brown pushed Loosmore's chest and took two steps back. (Dkt. 48-A at 63:4–14; 83:12–16). Loosmore pulled out his gun and shot Brown. (Dkt. 48-A at 63:12–14, 83:19–20). After shooting Brown, Loosmore put him in handcuffs. (Dkt. 48-A at 82:2–5). Loosmore did not identify himself as a police officer and Brown did not discover that he was an officer until he read a news article while in the hospital. (Dkt. 48-A at 64:1–12, 73:3–9).

Houston Police Department ("HPD")'s Internal Affairs Division ("IAD") investigated the shooting found that Loosmore violated HPD General Order 500-01, Effecting Arrests and Searches, which states that if off-duty officers are involved in a dispute that requires police action, off-duty officers shall not arrest any of the persons

involved unless there is an immediate threat of serious bodily injury or death. (Ex. 48-B at p. 19; Ex. 48-C-8 at bates # 000465). Loosmore was also found to have violated General Order 200-08, Conduct & Authority, Section 1, Sound Judgment by exercising poor judgment in going to Brown's residence to confront him. (Ex. 48-B at p. 19). Finally, IAD determined that Loosmore made "glaringly false statements" during the course of the investigation, as well as other statements that were "riddled with other inconsistencies and assertions . . . that are false or not supported by evidence" in violation of General Order 200-08 Conduct & Authority, Section 2, Truthfulness. (Ex. 48-B at p. 26).

After reviewing the IAD findings, HPD's Administrative Disciplinary Committee unanimously recommended that Loosmore be indefinitely suspended.[1] (Dkt. 48 at Ex. E). Loosmore resigned from HPD following an Indefinite Suspension Disciplinary Review Hearing. (Dkt. 48 at Exs. F, G). HPD Chief Acevedo wrote a memo to Captain Read of HPD's Employee Services Division advising that Loosmore had violated HPD policies and is not to be considered for rehire. (Dkt. 48-H at bates # 001871–72). After his resignation, Loosmore was indicted by a Harris County Grand Jury for felony Aggravated Assault. (Dkt. 48 at Ex. I). That case is currently pending.

Brown brought this lawsuit under 42 U.S.C. § 1983, arguing that Loosmore and Defendant City of Houston ("City") are liable for violating his Fourth Amendment rights. (Dkt. 7 at paras. 9–22). Brown also argues that the City is liable for imposing an

---

[1] An "indefinite suspension" is a suspension "for an indefinite time period" and is considered the highest level of HPD disciplinary action. *See* Dkt. 48-C-2 at bates # 000536–37; Dkt. 48-C-5 at 000735); Tex. Local Gov't Code §§ 143.1017(h), 143.119; Tex. Local Gov't Code §§ 143.1017(h), 143.119.

unconstitutional policy, custom, or practice of excessive force and for inadequate training and supervision of its police officers. (Dkt. 7 at paras. 23–43). The City filed this motion for summary judgment, arguing that Loosmore was not acting under the color of state law at the time of the shooting. (Dkt. 48 at p. 13–15). Alternatively, the City argues that Brown has not presented adequate evidence to support the factors required by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), and that Loosmore was adequately trained and disciplined following the shooting. (Dkt. 48 at pp. 15–16). The Court agrees that Brown has not presented sufficient evidence to subject the City to liability under *Monell*.

## II.   LEGAL STANDARD

### a. Summary Judgment Standard

Under Federal Rule of Civil Procedure Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Burrell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). A fact is material if "its resolution could affect the outcome of the action." *Nunley v. City of Waco*, 440 F. App'x 275, 277 (5th Cir. 2011). The court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of

demonstrating . . . that there is an issue of material fact warranting trial." *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). If the movant produces evidence that tends to show that there is no dispute of material fact, the nonmovant must then identify evidence in the record sufficient to establish the dispute of material fact for trial. *Celotex*, 477 U.S. at 321–23. The nonmovant must "go beyond the pleadings and by her own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001) (citing *Celotex*, 477 U.S. at 324). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertion, or by only a scintilla of evidence.'" *Jurach v. Safety Vision, L.L.C.*, 642 F. App'x 313, 317 (5th Cir. 2016) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

      b. **The "Color of State Law" Requirement**

To state a claim under 42 U.S.C. § 1983, the plaintiff must show that a person, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Bryant v. Military Dept. of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010). Individuals who are pursuing private aims and who are not acting by virtue of state authority are not acting under color of state law, even when the individuals are state officers. *Id.* Rather, "a person acts under color of state law only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed

with the authority of state law.'" *Polk Cty. v. Dodson*, 454 U.S. 312 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

### c. Standard for Municipal Liability Under 42 U.S.C. § 1983

In general, local governments are not vicariously liable under § 1983 for their employees' violations of federal constitutional rights. However, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury," a government entity is responsible under § 1983. *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). To allege a plausible claim under § 1983 against a municipality, "a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

> "An official policy is either (1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or (2) a persistent, widespread practice of officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents the municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority."

*McIntosh v. Smith*, 690 F. Supp. 2d 515, 530 (S.D. Tex. Feb. 2, 2010) (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).

A local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights can only be considered an official government policy

where the failure to train amounts to "deliberate indifference" to the rights of persons with whom the employee comes into contact. *Connick v. Thompson*, 563 U.S. 51 (2011) "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 410 (1997).

### III. ANALYSIS

Even assuming for the sake of this motion that Loosmore was acting under the color of state law when the altercation occurred, Brown has not provided sufficient summary judgment evidence to subject the City to liability under *Monell*. 436 U.S. 658.

Brown argues that the City had a policy that "permitted conduct that occurred while off duty and in between review periods to not appear on a performance review of the subordinate officer." (Dkt. 53 at p. 1). He further argues that the City's failure to include Loosmore's prior off-duty misconduct involving a firearm in his performance review and the city's failure to provide him with additional training after the misconduct constituted deliberate indifference on the part of the City "because the need for additional training of Officer Loosmore was so obvious." (Dkt. 53 at p. 2). Brown argues that the lack of additional training and the omission of the off-duty misconduct from Loosmore's performance review "caus[ed] the constitutional violation of Officer Loosmore's use of deadly force with his service weapon while attempting to effect a warrantless arrest as an off-duty peace officer against the Plaintiff." (Dkt. 53 at p. 2).

To constitute an "official policy," a practice must be "a persistent, widespread practice of officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents the municipal policy." *McIntosh*, 690 F. Supp. 2d at 530. Although Brown provided summary judgment evidence that Captain Robert Robertson, one of Loosmore's supervisors, had not used the Education Training Options (ETO) program for any of the lieutenants that he supervised, this evidence is not sufficient to create a genuine issue of material fact as to whether failure to utilize the ETO is so common and well-settled to constitute a custom that fairly represents the municipal policy. *See McIntosh*, 690 F. Supp. 2d at 530.

Furthermore, to establish the City's liability, Brown must show "proof that an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161 (5th Cir. 2010). Brown fails to identify any policymaker or provide evidence that such policymaker had actual or constructive knowledge of the policy or custom. Accordingly, Brown cannot satisfy the second element of a *Monell* claim.

Accordingly, there can be no municipal liability against the City and it is entitled to judgment in this case as a matter of law.

## IV. CONCLUSION

For the aforementioned reasons, the City of Houston's Motion to Dismiss is **GRANTED.**

SIGNED at Houston, Texas, this 26th day of August, 2021.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE